UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KIMBERLY PERKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:08-0289 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| DAVIDSON TRANSIT ORGANIZATION, | ) | |
| METROPOLITAN TRANSIT AUTHORITY, | ) | |
| AMALGAMATED TRANSIT UNION, | ) | |
| LOCAL UNION 1235 and | ) | |
| LAURA BAULSIR, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Pending before the court is defendant Laura Baulsir's and Davidson Transit Organization's Motion to Dismiss counts 1, 3, 5, 7, 11, 15, 16, 20, and 27 ("DTO's Motion") (Docket No. 30), Metropolitan Transit Authority's Motion to Dismiss ("MTA's Motion") (Docket No. 32), Amalgamated Transit Union's Motion to Dismiss ("ATU's Motion") (Docket No. 40), and Local Union 1235's Motion to Dismiss ("LU 1235's Motion") (Docket No. 43.) All these motions have been fully briefed. MTA's Motion, ATU's Motion, and LU 1235's Motion will be granted. DTO's Motion will be granted in part and denied in part.

**FACTUAL BACKGROUND**

Plaintiff Kimberly Perkins is an African-American, who was hired as a bus driver by MTA on April 5, 1999. She was an employee in good standing throughout her entire course of

1

employment.[1]  Defendant MTA is a publicly chartered metropolitan transit service provider for Davidson County, Tennessee.  Defendant DTO is a private, nonprofit corporation responsible for the employment of all personnel employed in the provision of public transit services in Davidson County, Tennessee.   Defendant ATU is a labor organization, and Defendant LU 1235 is a chapter of ATU.  Defendant Baulsir at all relevant times was the human resources manager for DTO and MTA.  Beginning on July 5, 2005, LU 1235 was held in trusteeship by ATU, with Kenneth Kirk, International Vice President of ATU, supervising LU 1235 as of that date.  At all times material to this action, a collective bargaining agreement ("CBA") was in place between DTO and LU 1235, which, along with the ATU and LU 1235 constitutions, set forth the standard of care for the union to use in its dealings in matters concerning labor relations and its members, including the plaintiff.

Following her hire, the plaintiff joined LU 1235, and she was an member in good standing at all times relevant to this action.  On April 6, 2004, while still employed as a bus driver, the plaintiff was rushed to the hospital due to a medical emergency.  She was hospitalized for six days due to complications from a previously undiagnosed diabetic condition.  On April 12, 2004 and again on April 15, 2004, through her union representative, the plaintiff made a request for leave under the Family and Medical Leave Act.  Both requests were denied by DTO and MTA, without explanation, as well as the plaintiff's request for a furlough, or other extended leave.  Around the same time, the plaintiff was terminated.  DTO and MTA told her that she was being terminated because of Tennessee Department of Transportation ("TDOT") rules that

---

[1]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1) and the plaintiff's responses (Docket Nos. 48 and 54) to the various motions to dismiss.

prohibit operation of a bus while using insulin to control diabetes. On April 15, 2004, a representative from LU 1235 filed a grievance on behalf of the plaintiff, requesting reasonable accommodation. The representative later followed up with a letter to DTO and MTA but received no response. LU 1235, however, did not declare the grievance resolved in the plaintiff's favor by default. LU 1235 took no further action with regard to the plaintiff's grievance or termination.

Other employees, however, allegedly favored by management, who were predominantly white and/or male and who suffered from the same medical condition that precluded driving a bus were provided with alternate assignments and were granted leave so they could have time to become in compliance with TDOT rules.

At some point, defendant Baulsir told the plaintiff that she would be eligible for rehire. In August 2004, after the plaintiff was removed from insulin requirements, the plaintiff applied for rehire. The plaintiff made five attempts for rehire over the next three years, none of which was successful.

On March 20, 2008, the plaintiff filed her Complaint in this action, which asserts a total of thirty claims against various defendants. Through a series of motions to dismiss filed over the next several months, the defendants moved to dismiss each of these claims.

## ANALYSIS

The plaintiff claims that the defendants MTA and DTO violated the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Tennessee Human Rights Act (THRA), § 4-21-101 *et seq.*, engaged in common law retaliatory discharge, recklessly, or alternatively, intentionally, inflicted emotional distress on the plaintiff, and

3

violated the Americans with Disabilities Act (ADA). The plaintiff claims that defendant Baulsir recklessly, or alternatively, intentionally, inflicted emotional distress on her. Further, the plaintiff claims that the defendants ATU and LU 1235 negligently, or alternatively, recklessly, or alternatively, intentionally, inflicted emotional distress on her, were unjustly enriched, breached the contract between them, violated the Tennessee Consumer Protection Act, and violated the ADA.

## I.     Motion to Dismiss – Failure to State a Claim

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6)[2], the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the

---

[2] The defendants are not always clear as to whether they are moving for dismissal under Rule 12(b)(1) or 12(b)(6), but, as discussed below, the relevant grounds for dismissal here, *i.e.*, federal preemption and the merits of the claim assuming the Complaint allegations are true, invoke the court's obligation to dismiss for failure to state a claim under Rule 12(b)(6) rather than the court's obligation to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004).

test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S.

5

at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court turns to an analysis of the plaintiff's claims, considering each group of defendants in turn.

## II.     Claims Against the Union Defendants

### A.     ATU and LU 1235

Most of the plaintiff's claims against ATU and LU 1235 are pre-empted and will be dismissed on that basis. The claims that are not pre-empted will be dismissed because the plaintiff's allegations, even taken as true, do not raise the plaintiff's right to relief above the "speculative" level, as *Twombly* requires to sustain a claim at the motion to dismiss stage.

Since 1962, the Supreme Court has held that section 301 of the Labor Management Relations Act (LMRA) pre-empts state law claims that substantially implicate the meaning of collective bargaining agreement terms.[3] *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (citing *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95 (1962)). A state-law claim can proceed in spite of section 301 pre-emption only if the claim is "independent of the agreement," *i.e.*, the claim can be resolved independently of the CBA at issue and the court, in resolving the claim, will not have to construe the CBA. *Id.* The Sixth Circuit has formulated a two-step test to determine whether section 301 pre-emption applies. *Id.* First, the court determines whether proof of the state-law claim requires interpretation of the CBA terms. *Id.* Second, the court must determine whether the right the plaintiff invokes is created by state law

---

[3] Section 301 states "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

6

or the CBA. *Id.* "If the right is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one of the criterion is satisfied, Section 301 pre-emption is warranted." *Id.* Therefore, if the plaintiff invokes rights created by the CBA, or must make substantial reference to the CBA in order to establish an essential element of his claim, the claim is pre-empted. *Id.*

Here, violations of the rights created by the CBA are the basis for all of the plaintiff's tort and equity claims against defendants ATU and Local 1235. The plaintiff alleges that LU 1235 had a duty to comply with the CBA, and that ATU had a duty, as parent union of LU 1235, to ensure that LU 1235 complied with the terms of the CBA. (Docket No. 1 at 16-18; 20-21.) Therefore, the claims of negligent infliction of emotional distress (NIED), reckless infliction of emotional distress (RIED), and intentional infliction of emotional distress (IIED) against ATU and Local 1235 are based on the "duty of care [owed] to the Plaintiff in accordance with the terms and conditions of the CBA." (*Id.*) Evaluating these claims to see if the duty of care was breached would plainly require the court to construe the CBA. Additionally, the claims of unjust enrichment are based on the respective unions' roles as "collective bargaining agent[s]"; clearly, whether the unions were unjustly enriched through their roles as collective bargaining agents for the plaintiff would require the court to examine what the unions' obligations were under the CBA. (*Id.* at 22.) Therefore, the plaintiff's tort and equity claims against ATU and LU 1235 are all plainly pre-empted and will be dismissed on that ground.

The court reaches the same conclusion as to the plaintiff's Tennessee Consumer Protection Act claims, which allege that ATU and LU 1235 failed to "provide the services, protection and other benefits promised to Plaintiff as a condition of her union membership."

7

(Docket No. 1 at 24-25.) While these claims are not facially tied to the CBA, resolving these claims, as the claims above, would undoubtedly cause the court to construe the CBA. The plaintiff's Complaint makes clear that the Consumer Protection Act claims are based on the plaintiff's payment of dues to the unions, and the plaintiff's allegation that the unions did not aggressively pursue her interests vis-a-vis her employer despite the fact that she paid dues. Evaluating this argument would undoubtedly require the court to construe the CBA, to determine if the defendants provided the "services, protection, and other benefits" promised. Therefore, these claims are also pre-empted by Section 301.[4] *See Banks v. Alexander*, 2008 WL 4297224, *3 (6th Cir. Sept. 19, 2008) ("the complaints amount to nothing more than an allegation that [the union and its representatives] breached duties imposed" by the CBA "and parties may not avoid preemption by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.") (internal citations and quotations omitted)

The plaintiff also claims that ATU and LU 1235 breached the binding contract between them, a contract of which, the plaintiff asserts, she is a third-party beneficiary. (Docket No. 1 at 23-24.) The court can find no factual support in the Complaint for the "blanket assertions" that comprise this claim, *i.e.*, no support for the notion that the plaintiff is a third-party beneficiary and no support for the notion that the contract was breached. The plaintiff's breach of contract claims against ATU and LU 1235 will be dismissed.

As to the ADA claim, the Sixth Circuit and other courts have concluded that section 301

---

[4] The court is aware that ATU and LU 1235 have offered other, potentially compelling, bases for dismissal, including that the plaintiff's claims may be time-barred and not exhausted. Because the claims are clearly pre-empted it is not necessary for the court to analyze these additional bases for dismissal.

8

does not pre-empt a plaintiff's federal discrimination claims, whether or not a collective bargaining agreement exists. *See LaPointe v. United Auto Workers*, 8 F.3d 376, 380-81 (6th Cir. 1993); *Patton v. Toshiba Consumer Prods., Inc.*, 967 F. Supp. 283, 286-87 (M.D. Tenn. 1997) (collecting cases). That said, the allegations in the Complaint as to the plaintiff's ADA claim against these two defendants do not "raise [the] right to relief above the speculative level" as required by *Twombly*. The plaintiff alleges that LU 1235's "participation in a contractual relationship" with DTO and ATU's oversight of LU 1235 "had the effect of subjecting Plaintiff to discrimination on the basis of disability." (Docket No. 1 at 27.) Other than this vague and confusing statement attached to a "formulaic recitation of the elements of a cause of action," the plaintiff provides no basis to support the allegation that LU 1235 or ATU violated the ADA. Further, as discussed below, it is apparent that the plaintiff has not pleaded that she actually had a disability, as that term is defined by the ADA. Therefore, the plaintiff's ADA claims as to LU 1235 and ATU will be dismissed.

### III. Claims Against the Transit Defendants

#### A. MTA

The plaintiff has asserted seven claims against defendant MTA. MTA asserts that all claims against it should be dismissed. A primary ground MTA relies on is its supposed sovereign immunity. (Docket No. 30 at 2-5; Docket No. 33 at 2.) MTA simply argues that it was chartered by a state law, and, therefore, it should be considered immune. (*Id.*) But MTA itself concedes that it is a "municipal regulatory agency," and all signs from the parties briefing points to MTA being a municipal, as distinguished from a state, agency. (*Id.*) While the court would obviously not have jurisdiction over an immune party, the court simply sees the record as

9

devoid of any indication that MTA is an arm of the state and therefore immune. MTA appears to be an arm of the city government, and, therefore, not immune from suit. *See Alden v. Maine*, 527 U.S. 706, 756 (1999). Therefore, without more indicia of state sovereignty, MTA is not entitled to dismissal of all claims on this overarching ground. Therefore, the court will consider each claim against MTA in turn.

That said, MTA is still entitled to dismissal of all of the causes of action against it. As the court reads the plaintiff's Complaint, the plaintiff alleges that, even though DTO is "responsible for all personnel employed in the provision of public transit services to Davidson County, Tennessee" (Docket No. 1 at 5), DTO and MTA were something akin to "dual" employers, with DTO acting as the "employment arm" of MTA. (*Id.* at 5, 12.) The problem with the plaintiff's "dual employer" allegation is that, as discussed by this court only a few months ago, while there is some overlap between the two organizations, "it is a settled fact that DTO and MTA are separate legal entities and that only DTO is involved with day-to-day operations such as hiring, disciplining, and firing employees." *Thompson v. DTO*, No. 07-221, 2008 WL 2588060, at *7 (June 25, 2008).

It is possible that a degree of integration between two companies can result in the court's considering two separate entities a common employer of an individual. *See Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997). But MTA correctly points out that the plaintiff has offered only "blanket assertions" to support this dual employer relationship. (Docket No. 1 at 6, 16; Docket No. 33 at 6.) Rather, the factual allegations in the Complaint, such as that DTO and LU 1235 had the CBA agreement, support the notion that DTO, not MTA, was the plaintiff's employer. (Docket No. 33 at 7.)

10

While arbitration decisions do not have preclusive effect on this employer identification issue as to the plaintiff's federal discrimination claims (*See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 548 (6th Cir. 2008)), the court notes that, in a 2005 arbitration initiated by ATU to determine who was the employer of an individual such as the plaintiff, the arbitrator concluded that DTO was, and MTA was not. *Thompson*, 2008 WL 2588060, at *2. Further, in the briefing on the motions to dismiss, the plaintiff did not challenge MTA's assertion that it was not the plaintiff employer. While the court is required to accept all the plaintiff's warranted factual allegations as true at this stage, the court is not required to accept the plaintiff's legal conclusions or unwarranted factual inferences about who her employer was. *See Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 575 (6th Cir. 2008). Because, in light of the surrounding case law and findings, the plaintiff has not sufficiently pled that MTA was her employer, MTA cannot be liable to the plaintiff for causes of action that are based on an employer/employee relationship, *i.e.*, the plaintiff's Title VII, THRA, common law retaliatory discharge, and ADA claims. *Swallows*, 128 F.3d at 992-993; *Walton v. Nova Info. Sys.*, No. 06-292, 2008 WL 1751525, *17 (E.D. Tenn. April 11, 2008). Therefore, those causes of action as to MTA will be dismissed.[5]

Each of the remaining counts against MTA will be dismissed as well. As to the plaintiff's section 1981 claim, while MTA is not "the state" for purposes of sovereign immunity, MTA, as a publicly chartered transportation provider, is plainly a state actor. *See Thompson*,

---

[5] The court understands that the relationship between DTO and MTA is complex, and, through this opinion, the court does not attempt to forestall future plaintiffs from asserting that they were jointly employed by both DTO and MTA. Rather, the court only states that *this* plaintiff has insufficiently pled a dual employer relationship.

11

2008 WL 2588060, *7. As MTA is a state actor, claims against MTA alleging racial discrimination must be brought under section 1983, not section 1981. *See Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989) (finding "the express cause of action for damages created by section 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in section 1981 by state governmental units ...") Therefore, the plaintiff's section 1981 claim as to MTA will be dismissed.

The other tort claims the plaintiff advances against MTA will also be dismissed. Plaintiff alleges, in cursory fashion, that MTA recklessly or intentionally inflicted emotional distress on her. (Docket No. 1 at 18-20.) The emotional distress claims against MTA simply provide a formulaic recitation stating that MTA's conduct was "reckless" and "outrageous," but the Complaint contains no factual support for the allegation that MTA or its representatives engaged in conduct that is "outrageous" as is required to establish a claim for both RIED and IIED. *See Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W. 3d 22, 39 (Tenn. 2005) (noting that the requirement that the conduct alleged be "atrocious" and "utterly intolerable in a civilized community" performed an "important gatekeeping function") Therefore, all claims against MTA will be dismissed.[6]

### B. DTO

#### 1. Claims to be dismissed

The plaintiff's Section 1981, ADA, and tort claims against DTO will be dismissed. As a preliminary matter, DTO claims that, based on the plaintiff's allegation that it is a "dual

---

[6]The court is aware that MTA advanced nearly a dozen arguments to dismiss some or all of the claims against it. While many of these arguments appear to have some merit, it is not necessary to consider them, as there is another basis for dismissing all the counts against MTA.

employer" with MTA, DTO is entitled to sovereign immunity protection as well.[7] (Docket No. 30 at 2-5.) As discussed above, the court fails to see why a municipal agency such as the MTA would be entitled to sovereign immunity protection and also fails to see why a private agency such as the DTO would be subject to that protection either. With this overarching ground for dismissal inapplicable, the court will consider each claim against DTO in turn.

First, as to the section 1981 claim, DTO is correct that this claim should be dismissed. While DTO is not "the state" for purposes of sovereign immunity, DTO is a state actor, because, as this court found earlier this year after thoroughly considering the function and operations of DTO, "its sole purpose is to support MTA through the state-assigned task of employing individuals to operate the metropolitan transport system." *Thompson*, 2008 WL 2588060, *7. As DTO, just as MTA, is a state actor, claims against DTO alleging racial discrimination must be brought under section 1983, not section 1981. *See Jett*, 491 U.S. at 733. Therefore, the plaintiff's section 1981 claim against DTO will be dismissed..[8]

The plaintiff has also alleged that DTO violated the Americans with Disabilities Act (ADA). The ADA prohibits employers from discriminating against employees with a disability who would otherwise be able to perform the essential duties of the job with or without reasonable accommodation. 42 U.S.C.§ 12111-12112(a). A disability is a physical impairment that "substantially limits" one or more major life activities. *Toyota Motor Mfg. Ky. Inc. v.*

---

[7] Both MTA and DTO dispute this allegation that DTO and MTA are dual employers. (Docket No. 30 at 3; Docket No. 33 at 2.)

[8] It is therefore not necessary to consider DTO's argument that the plaintiff's section 1981 claim is barred because she failed to explicitly allege "race" discrimination and because she did not exhaust her internal union remedies before bringing the claim. (Docket No. 30 at 8-10.)

*Williams*, 534 U.S. 184, 197 (2002). Therefore, to qualify as disabled under the ADA, one must do more than allege a physical or mental impairment. One must show that the impairment has a "substantially limit[ing]" effect on major life activities in order for that impairment to rise to the level of disability. *Id.* In her Complaint, the plaintiff only alleges that she suffered from diabetes that required insulin to control it. (Docket No. 1 at 8.) Even accepting the plaintiff's allegations as true, the plaintiff had or has an "impairment" that does not raise to the level of a disability. *See Sutton v. United Air Lines*, 527 U.S. 471, 482-83 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.") Therefore, the plaintiff's ADA claim as to DTO will be dismissed.

The plaintiff's common law tort claims against DTO will be dismissed as well. As to the common law retaliatory discharge claim, DTO is correct that the claim appears time-barred. The plaintiff has alleged that she was fired in 2004. (Docket No. 1 at 8.) She filed her Complaint in 2008, and complaints for retaliatory discharge must be filed within one year of the allegedly discriminatory act of termination. *Conley v. Yellow Freight Sys.*, 521 F. Supp. 2d 713, 719 (E.D. Tenn. 2007) While the plaintiff alleges that she attempted to get rehired and that Baulsir told her at one point that she was "eligible" for rehire (not that she would be rehired), this is insufficient to toll the statute of limitations. "An employee's hope for rehire ... cannot toll the statute of limitations absent some employer conduct likely to mislead an employee into sleeping on his rights." *Weber v. Moses*, 938 S.W. 2d 387, 392 (Tenn. 1996). The statement, made at some unspecified time in the past four and one-half years, that the plaintiff was "eligible" for re-hire is not sufficient to toll the statute under the standard articulated in *Weber*. Therefore, the plaintiff's

14

claim for retaliatory discharge will be dismissed as time barred. As to the plaintiff's claim for RIED and IIED, these claims will be dismissed on the same ground as discussed above with regard to MTA.[9]

### 2. Claims not to be dismissed

The plaintiff finds more success in sustaining her other statutory causes of action against DTO. In count three, plaintiff alleges, among other things, that "the discrimination on the part of Defendant DTO constitutes a violation of the plaintiff's rights under Title VII." (Docket No. 1 at 11.) In support of the discrimination allegation, the plaintiff claims that she and other members of her protected class were treated less favorably in terms of accommodations made for illness than employees who were white and/or male. (*Id.* at 8.) DTO does not challenge that this allegation states a claim under Title VII, but rather argues that the plaintiff has not properly exhausted her administrative remedies because she did not allege racial discrimination in her administrative charge, a charge DTO provides for the court. (Docket No. 60 at 7-8.) The court agrees that the plaintiff's Title VII claim is not sustainable on racial discrimination grounds because the plaintiff did not allege racial discrimination in her administrative charge. That said, the charge DTO provides shows that the plaintiff did allege gender discrimination, which she subsequently asserted in her Complaint. (Docket No. 60 Ex. C.) Therefore, failure to exhaust is not a proper basis for dismissal of this claim in totality, as the gender discrimination claim is still a proper basis for the Title VII action. As DTO has provided no other direct challenge to the propriety of the plaintiff's Title VII claim, that claim will not be dismissed.

---

[9] Therefore, it is not necessary to consider the DTO's arguments that the plaintiff's RIED and IIED claims are barred on statute of limitations grounds or due to Tennessee's Worker Compensation Law.

The plaintiff has also alleged that she is entitled to relief under the Tennessee Human Rights Act, which prohibits, among other things, racial and gender discrimination in the "compensation, terms, conditions, or privileges" of employment. T.C.A. § 4-21-401(a)(1). For the reasons discussed above, in the Title VII context, the plaintiff has alleged facts that, taken as true, demonstrate racial and/or gender discrimination in employment. Again, DTO does not argue that the plaintiff has failed to state a claim for discrimination, but rather argues that the THRA claim is time-barred, either because the plaintiff waited more than thirty days to file her THRA claim from the day she received her Notice of Determination from the Tennessee Human Rights Commission (THRC), or because she waited more than 180 days from the date of the discrimination to file her claim with the THRC. (Docket No. 60 at 2-3.) The court finds neither argument convincing.

First, the Notice of Determination dated January 8, 2008 clearly told the plaintiff that she had 90 days from the date of the letter to file "a private action in federal court." (Docket No. 30 Ex. D.) The plaintiff filed this action on March 20, 2008. DTO completely ignores this third paragraph of the Notice of Determination, and, instead, entirely focuses on the second paragraph, which told the plaintiff she had 30 days to file her action in state court. (Docket No. 60 at 2-3.) Without an explanation from DTO as to why the federal action option discussed in paragraph 3 does not permit the claim here, the court will not dismiss the THRA claim on this ground.

Second, it is not clear from the Complaint when precisely the discrimination ended, *i.e.*, it is possible from the face of the Complaint to interpret the discrimination as continuing during the plaintiff's numerous attempts at being re-hired, including during the 180-day period before the plaintiff filed her THRC Charge on April 13, 2006. As it is not absolutely clear that 180 days

16

passed between the day of the discrimination and the day the plaintiff filed her Charge with the THRC, it would be inappropriate to dismiss the plaintiff's THRA claim on this ground. *See Warren Freedenfeld Associates, Inc. v. McTigue*, 531 F.3d 38, 44-45 (1st Cir. 2008) (finding where dismissal is premised on statute of limitations grounds, to dismiss, there must be "no doubt" the claim is barred).

DTO argues that, even if the court finds the THRA claim should not be dismissed, it should still order the allegation of "disability discrimination" stricken, because the THRA does not recognize disability discrimination as actionable. (Docket No. 30 at 12-13.) While DTO appears correct in its interpretation of the THRA, a formal action such as striking the language at issue is not necessary. *Johnson v. Clover Botton Dev. Ctr.*, 05-1440, 2007 WL 283138, *2 (Tenn. Ct. App. Jan. 31, 2007) It should be clear from this ruling that the plaintiff's THRA claim going forward is potentially sustainable only on gender discrimination grounds.[10]

### C. Claims Against Baulsir

In her Complaint, the plaintiff alleges defendant Baulsir inflicted emotional distress on her, either recklessly or intentionally. (Docket No. 1 at 19, 21.) The only allegation in the Complaint as to Baulsir specifically is that, at some point, she told the plaintiff that the plaintiff was eligible for rehire. (*Id.* at 9.) Obviously, as discussed in the MTA section, such conduct

---

[10] DTO also generally asserts (1) that the plaintiff's brief is too long and any text over the page limit should be disregarded and (2) that the plaintiff has failed to explicitly incorporate his factual allegations into his claims. (Docket No. 60 at 4; Docket No. 30 at 6-7.) While the plaintiff's brief is over the page limit, that is only because the plaintiff pasted much of her Complaint into her brief. Therefore the plaintiff did not gain any extra "argument room" by exceeding the page limit, and, therefore, the court will not disregard any of the plaintiff's argument. Further, while the plaintiff did not explicitly incorporate her factual allegations into each claim, the court believes it was able to use common sense to determine which factual allegations relate to which claims.

17

would fall well short of "outrageous" and, therefore, the RIED and IIED claims against defendant Baulsir will be dismissed.

## CONCLUSION

For the reasons discussed above, all of the plaintiff's claims will be dismissed, except the plaintiff's Title VII and THRA claims against defendant DTO.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

18